# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

SHEDRICK ANTWAN RUSSELL,

    Plaintiff,

v.                                      Case No. 8:16-cv-493-WFJ-AAS

SECRETARY, DEPARTMENT OF
CORRECTIONS,

    Defendant.
_____/

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Shedrick Antwan Russell petitions for writ of habeas corpus under 28 U.S.C. § 2254, challenging his state court conviction for robbery with a weapon. Having reviewed the petition and supporting memorandum of law, Dkts. 1 & 2, the State's response and supporting appendix, Dkts. 28 & 18,[1] and Russell's reply, Dkt. 31, the Court denies the petition.

## BACKGROUND AND PROCEDURAL HISTORY

*Conviction and Direct Appeal.* Just before 10 p.m. on the evening of May 9, 2004, Shedrick Russell walked into a Golden Corral restaurant in Zephyrhills, Florida. Ex. 1d at 561–62. Russell was carrying a pistol and had a t-shirt wrapped

---

[1] The appendix contains the relevant state court record in 27 exhibits. Record citations will include the exhibit number and, if necessary, the page number.

around his face just below his eyes to conceal his identity. Ex. 1d at 562; Ex. 1e at 693–94, 708–09. Russell proceeded to walk the restaurant manager back to her office at gunpoint. Ex. 1d at 562; Ex. 1e at 696. Once in the office, the manager emptied the safe and gave Russell all the cash that was inside. Ex. 1d at 562–63. Russell then took the money to the car that was waiting for him in the parking lot and rode off. Ex. 1e at 698–701.

Police interviewed the Golden Corral employees and patrons who witnessed the robbery. One of the restaurant servers, Joseph Burke, managed to see Russell's face. *Id.* at 701–09. After the robbery, Burke had followed Russell out of the restaurant into the parking lot, where he saw Russell sitting in the passenger seat of a two-door Nissan coupe. *Id.* at 698–701, 733–34. At that point, Russell had removed the t-shirt from his face, so Burke could see him clearly. *Id.* at 700. Later, using photo packs the police provided him, Burke positively identified Russell as the man who committed the robbery. *Id.* at 702–09.

Police also obtained from an eyewitness a partial license tag number of the car Russell was seen in when riding away from the restaurant. Ex. 1f at 825–27. With this information and a description of the vehicle, police identified the car as a Nissan 240SX registered to Adonia Olsen. The police investigated further and discovered that Olsen had loaned the car to Russell on the night of the robbery. Ex. 1d at 599–600, 604.

Russell was charged with one count of robbery with a firearm. Ex. 1 at 28–29. Following a trial, the jury found Russell guilty as charged. Ex. 1 at 99; Ex. 1g at 991–92. Russell was sentenced to life in prison as a habitual offender and prison releasee reoffender. Ex. 1 at 35–37, 130–36; Ex. 1a at 214–15. Russell appealed his conviction, Ex. 2, and the state appellate court affirmed without a written opinion. Ex. 4.

***Postconviction proceedings.*** Following his conviction, two events occurred that in Russell's opinion casted doubt upon his conviction. First, Olsen testified under oath at Russell's sentencing hearing and recanted her previous trial testimony, claiming she had not loaned her car to Russell on the night of the robbery but to her former drug dealer who looks like Russell. Ex. 1a 157–61. Second, while Russell's direct appeal was pending, one of the jurors in the trial wrote a letter to Russell's appellate attorney informing her that another juror had visited the crime scene during the trial—in direct violation of the judge's order—and had informed the other members of the panel about the layout of the driveway leading to the Golden Corral parking lot. Ex. 1i at 1205. The juror who contacted Russell's attorney felt this outside information affected the verdict because questions arose during deliberations over the direction the defendants drove when leaving the restaurant after the robbery. *Id.*

Russell filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, raising three grounds he believed entitled him to a new trial: (1) Olsen's recantation of her trial testimony; (2) the newly discovered evidence of juror misconduct; and (3) ineffective assistance on the part of his trial attorney for failing to call multiple alibi witnesses. Ex. 1h at 1017–26.

The court rejected all three grounds. It rejected Russell's ineffective assistance claim on the face of the record. Ex. 1h at 1184–1187. The court then denied the other two grounds following an evidentiary hearing. Dkt. 35-1 at 2–7.[2] The state appellate court affirmed without a written opinion. Ex. 16. And the Florida Supreme Court summarily denied Russell's motion for discretionary review. Ex. 26. Russell then filed this timely petition seeking relief under 28 U.S.C. § 2254.

## II. AEDPA STANDARDS

Section 2254 of Title 28 of the United States Code allows a prisoner in custody pursuant to the judgment of a state court to petition a federal court for a writ of habeas corpus on the basis that the prisoner's continued custody violates the U.S. Constitution or federal law. As amended by the Antiterrorism and Effective Death Penalty Act (AEDPA), § 2254 provides a narrow avenue for relief, imposing

---

[2] Dkt. 35-1 is an electronic supplement to the paper appendix, Dkt. 18, and contains the state court's final order denying Russell's Rule 3.850 motion for postconviction relief after an evidentiary hearing. *See* Dkt. 35-1 at 2–7.

procedural requirements to invoke federal review and requiring federal courts to give substantial deference to state court judgments that reach the merits of any federally based claims. *See* § 2254(b), (d); *Raulerson v. Warden*, 928 F.3d 987, 995 (11th Cir. 2019).

***Exhaustion of State Court Remedies and Procedural Default.*** To seek federal habeas review, a petitioner must exhaust all available state court remedies. § 2254(b)(1)(A). This requires the petitioner to "'fairly presen[t]' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights" *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)). This can be achieved by the petitioner "indicat[ing] the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). Briefing an issue solely as a matter of state law is insufficient. *Nelson v. Sec'y, Fla. Dep't of Corr.*, 610 F. Supp. 2d 1323, 1332 (M.D. Fla. 2009).

Full exhaustion requires a prisoner to "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S.

5

838, 845 (1999). In Florida, a complete round of appellate review generally requires filing a Rule 3.850 motion for postconviction relief and an appeal of the denial to one of the state's district courts of appeal. *See* Fla. R. App. P. 9.141; *see also Tucker v. Dep't of Corr.*, 301 F.3d 1281, 1286 (11th Cir. 2002) (Barkett, J., concurring). A prisoner's failure to present his federal claims to the state court renders those claims procedurally defaulted. *See O'Sullivan*, 526 U.S. at 848; *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

A procedural default can arise in two ways. The first is a failure to exhaust state court remedies as just explained. The second occurs when the state court declines to reach the merits of a claim and denies the claim by applying a state-law procedural default principle—the contemporaneous objection rule, for example. *Bailey v. Nagle*, 172 F.3d 1299, 1302 (11th Cir. 1999).

Once a federal claim has been defaulted in state court, "federal habeas review of the claim[] is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[] will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. Cause requires the petitioner to show that some objective factor external to the defense led to the default. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986). Prejudice requires the petitioner to show "not merely that the errors at his trial [or sentencing] created a *possibility* of

6

prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial [or sentencing] with error of constitutional dimensions." *Brown v. United States*, 720 F.3d 1316, 1333 (11th Cir. 2013) (quoting *United States v. Frady*, 456 U.S. 152, 167–68 (1982)).

A miscarriage of justice sufficient to avoid a procedural default occurs only in extraordinary cases in which a constitutional violation has led to the conviction of one who is "actually innocent." *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). This requires more than prejudice. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). The petitioner must support the defaulted claim with "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* at 324. The evidence must then establish that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327.

***Standard of Review Under the AEDPA.*** For claims adjudicated on the merits, the AEDPA requires the federal court to afford substantial deference to the decisions of the state courts. *Raulerson*, 928 F.3d at 996. Under the Act, a federal court will not grant relief unless the state court's decision denying relief was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding." 28 U.S.C. § 2254(d). A decision is "contrary to" clearly established federal law if the state court "applied a rule in contradiction to governing Supreme Court case law" or "arrived at a result divergent from Supreme Court precedent despite materially indistinguishable facts." *Dill v. Allen*, 488 F.3d 1344, 1353 (11th Cir. 2007). A decision is unreasonable "only if no 'fairminded jurist' could agree with the state court's determination or conclusion." *Holsey v. Warden, Ga. Diagnostic Prison*, 694 F.3d 1230, 1257 (11th Cir. 2012) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)).

## DISCUSSION

Russell raises six grounds for relief—the three grounds raised in his Rule 3.850 motion, a Confrontation Clause claim, a freestanding actual innocence claim, and a claim for ineffective assistance of postconviction counsel. As explained below, all these grounds are procedurally barred or meritless.

***Ground One: Confrontation Clause Violation.*** Russell's first ground for relief pertains to the presentation of perpetuated testimony. Burke, the witness who positively identified Russell, was unavailable to testify at trial because he was deployed on active duty military service at the time. Ex. 1 at 65. The State moved for and was granted permission to perpetuate Burke's testimony. *Id.* at 66–69. At trial, the State presented to the jury a video recording of Burke's deposition

testimony—including his cross-examination. Ex. 1e 691–737. Russell asserts that the admission of Burke's recorded testimony violated his Sixth Amendment right to confront his accusers as well as other constitutionally protected rights. Dkt. 2 at 2. This claim does not warrant relief.

First, it is procedurally barred. At trial, Russell failed to object to the presentation of Burke's testimony on Confrontation Clause grounds. Instead he objected, claiming only that the State had not proven Burke was unavailable. Ex. 1e at 683–88. Florida's contemporaneous objection rule requires a criminal defendant to make a timely objection to the admission of evidence stating the specific ground for why the evidence should be excluded in order to preserve the issue for appeal. *See Harrell v. State*, 894 So. 2d 935, 940 (Fla. 2005). By failing to challenge Burke's testimony on the basis that its admission violated the Confrontation Clause, Russell waived any related claim of error.

While Russell did argue the Confrontation Clause on direct appeal, Ex. 2, the State asserted this argument was not preserved for review. Ex. 3 at 9–11. The appellate court then affirmed without opinion. Ex. 4. That silent affirmance is presumed to rest on the procedural default, thus barring this Court from now considering the merits of Russell's claim. *See Bennett v. Fortner*, 863 F.2d 804, 807 (11th Cir. 1989) ("This circuit to a point has presumed that when a procedural default is asserted on appeal and the state appellate court has not clearly indicated

9

that in affirming it is reaching the merits, the state court's opinion is based on the procedural default.").

Further, Russell cannot avoid the procedural bar. He has alleged no cause for the default, and no prejudice can be attributed to the admission of Burke's testimony as it did not violate the Constitution. A Confrontation Clause violation occurs when a defendant is "prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness." *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986). Here, Russell's attorneys vigorously cross-examined Burke during his deposition, challenging his memory of the events surrounding the robbery. Ex. 1e at 711–31. The full video recording of Burke's testimony, including his cross-examination, was then presented to the jury. *Id.* at 691–737. This was enough to satisfy the Sixth Amendment. Ground One is denied.

***Ground Two: Olsen's Recanted Testimony as basis for a new trial.*** Russell argues that errors in the state postconviction proceedings related to the handling of Olsen's recanted testimony violated his equal protection and due process rights. He makes two arguments to this end. First, Russell claims he was denied the state-created right to present Olsen's testimony at the postconviction evidentiary hearing. Specifically, he asserts that the State procured Olsen's absence by threatening to charge her criminally and to take custody of her children if she

appeared at the hearing, which ultimately dissuaded her from testifying. Dkt. 2 at 2–3. Second, Russell argues the state court rejected Olsen's testimony by applying the wrong legal standard. *Id.* at 2. Neither argument warrants relief.

To Russell's first point, an alleged defect in state collateral proceedings does not provide a basis for federal habeas relief. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1365 (11th Cir. 2009); *Quince v. Crosby*, 360 F.3d 1259, 1262 (11th Cir. 2004). Even the state court's refusal to grant a prisoner an evidentiary hearing will not suffice. *Spradley v. Dugger*, 825 F.2d 1566, 1568 (11th Cir. 1987) (per curiam). The reasoning underlying this principle is clear: "a challenge to a state collateral proceeding does not undermine the legality of the detention or imprisonment— *i.e.*, the conviction itself." *Carroll*, 574 F.3d at 1365. Such challenges typically involve claims arising under state law—for example, the availability of and procedures used in postconviction proceedings—and do not involve claims arising under federal law as § 2254 requires. *Id.* Thus, the inability to present Olsen's live testimony at the postconviction hearing is not a basis for relief.

Moreover, the suggestion that the government procured Olsen's absence was never raised to the state appellate court following the denial of Russell's Rule 3.850 motion. Ex. 13 at 11–16. Nor is there any evidence in the record to support this claim. Olsen repeatedly failed to appear because she was incarcerated or could

11

not be located.³ Ex. 1k at 1478–84, 1533–34, 1569. The state court rescheduled the evidentiary hearing four times in an effort to have Olsen to testify, Ex. 1k at 1505–07, 1519–25, 1535–36, 1585, and then mitigated Olsen's failure to appear by allowing her sworn recantation testimony from Russell's sentencing hearing to be read into the record, Ex. 1j at 1406–38.

Russell's second argument fails to implicate a federal right. The state court denied Russell's request for a new trial because it found Olsen's recantation was not truthful—the Florida law requirement for granting a new trial based on recanted testimony. Dkt. 35-1 at 4–5 (citing *Montgomery v. State*, 826 So. 2d 531 (Fla. 5th DCA 2002), *State v. Spaziano*, 692 So. 2d 174, 177 (Fla. 1997), and *Armstrong v. State*, 642 So. 2d 730, 735 (Fla. 1994)). Russell's Rule 3.850 motion also did not mention the Constitution or federal law. Ex. 1h 1020–21. The rejection of Olsen's testimony thus turned entirely on the interpretation of state law and did not implicate the U.S. Constitution or other federal law and therefore provides no basis for federal habeas relief. *See Carroll*, 574 F.3d at 1365; *McCullough v. Singletary*, 967 F.2d 530, 535 (11th Cir. 1992) ("A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved."). Ground Two is denied.

---

³ However, the day the evidentiary hearing convened, Russell's attorney claimed that Olsen was in bed with a 104-degree fever. Ex. 1j at 1389–91.

***Ground Three: Juror Misconduct as a basis for a new trial.*** Russell's third ground seeks relief based on juror misconduct. Russell asserts that the rogue juror's visitation of the crime scene presented an "outside influence" on the jury that undermined the trial process and violated his constitutional right to a fair trial. Dkt. 2 at 3–4. However, Russell failed to adequately present a federal claim to the state courts, raising only state-law claims in the postconviction proceedings.

In his Rule 3.850 motion, Russell asked for a new trial based on newly discovered evidence as provided for under Florida law. Ex. 1h at 1022. He mentioned only in passing that the juror's misconduct may have affected his right to a fair trial, but never referenced the Constitution or any related federal rights. *See Id.* The state court in turn treated Russell's claim as a request for a new trial according to Florida law and denied it. Dkt. 35-1 at 5–7.

In his subsequent appeal, Russell again made state-law arguments. He argued the trial court erred in ruling that his request to interview members of the jury was untimely and erred in finding no prejudice attributable to the juror's actions—both claims were rooted in Florida law. Ex. 13 at 17–21.

Russell has also presented no basis for avoiding a procedural default. He offers no cause for failing to raise a federal claim in state court. Likewise, he cannot show prejudice attributable to the juror's actions. As the state postconviction court pointed out, the juror's comments offered no information

13

outside of what was already in evidence. The jury saw photographs of the outside of the restaurant, which included the driveway and parking lot, and the layout of the driveway had no bearing on any of the relevant issues in the case—specifically Burke's identification testimony. Ex. 1d at 578–84; Dkt. 35-1 at 5–7. Ground Three is therefore procedurally barred and denied.

***Ground Four: Ineffective Assistance of Counsel—Failure to Call Alibi Witnesses***. Russell asserts that his trial counsel rendered ineffective assistance for failing to call six alibi witnesses whose composite testimony supposedly established a timeline that would have made it impossible for Russell to have committed the robbery. Dkt. 2 at 4–5. As the state court rejected this claim on the merits, Russell must show that the state court's decision was contrary to or unreasonably applied clearly established Supreme Court precedent.

To establish ineffective assistance of counsel, the defendant must show (1) "that counsel's performance was deficient," and (2) "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To state a viable claim, the petitioner must satisfy both of these prongs. *Id.*

To satisfy the first prong, a petitioner must show that counsel's representation "fell below an objective standard of reasonableness." *Id.* at 688. The test for reasonableness is whether, "in light of all the circumstances," counsel's conduct fell "outside the wide range of professionally competent assistance." *Id.* at

14

690. In other words, "a petitioner must establish that no competent counsel would have taken the action that his counsel did take." *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000).

Review of counsel's performance must be highly deferential. *Strickland*, 466 U.S. at 689. Trial counsel is entitled to a "presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (quotations omitted). "[C]omplaints about uncalled witnesses are not favored, because the presentation of testimony involves trial strategy and 'allegations of what a witness would have testified are largely speculative.'" *Shaw v. United States*, 729 F. App'x 757, 759 (11th Cir. 2018) (quoting *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978)). Choosing which witnesses to call "is the epitome of a strategic decision, and it is one that . . . will seldom, if ever, [be] second guess[ed]." *Rhode v. Hall*, 582 F.3d 1273, 1284 (11th Cir. 2009).

To satisfy the prejudice prong, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 695. A reasonable probability is one sufficient to undermine confidence in the outcome. *Id.*

Here, the state court correctly found that any claim of ineffective assistance is refuted by the record, specifically Russell's own comments in open court. At the end of trial when the judge asked Russell if he wanted to testify, Russell declined

15

but informed the judge of six alibi witnesses he wanted to have testify. Russell then explained that the decision not to call three of the witnesses, Teddy Lamar, Trudy Davis, and Tankeyia Davis, was a strategic one made by his attorney. Russell told the judge that he and his attorney had discussed the possibility of calling these witnesses, but ultimately his attorney refused, believing that calling them was not a "good idea." Ex. 1f at 854–55. Russell began to give the reasons why his attorney declined to call these witnesses, until his attorney interrupted and asked the judge not to allow Russell to discuss the reasoning for his decision. *Id.* Russell agreed not to comment further. *Id.* at 856.

For the other three witnesses, Russell admitted that his attorney was not at fault for failing to call them. Russell told the trial judge that he had given the names of the witnesses to his previous attorney, who then failed pass them on to his current lawyer. *Id.* at 854–55. Russell admitted that his current attorney did not know about these witnesses and had no reason to investigate them. *Id.* at 856. When the judge asked Russell for the names of the witnesses, he could not provide them. *Id.* at 857–58.

In short, Russell's own statements show that the failure to call the proposed witnesses stemmed from a strategic choice and his own actions—not from his counsel's poor performance. Ground Four is therefore denied.

***Ground Five: Independent Actual Innocence Claim.*** Russell's fifth ground asserts a freestanding claim of actual innocence. Eleventh Circuit precedent, "forecloses habeas relief based on a prisoner's assertion that he is actually innocent of the crime of conviction 'absent an independent constitutional violation occurring in the underlying state criminal proceeding.'" *Raulerson*, 928 F.3d at 1004 (quoting *Brownlee v. Haley*, 306 F.3d 1043, 1065 (11th Cir. 2002)). Russell claims the record establishes his conviction was procured through the violation of his constitutional rights. Dkt. 2 at 5–6. Yet he cannot identify any specific constitutional violation that helped secure his conviction—in this ground or in the previous grounds. With no established constitutional violation, this claim must be denied.

***Ground Six: Ineffective Assistance of Postconviction Counsel.***

This final claim for relief must be rejected as § 2254(i) expressly states that ineffective assistance of counsel during federal or state collateral proceedings is not a ground for federal habeas relief.

Accordingly, it is **ORDERED** that:

1. The petition for writ of habeas corpus (Dkt. 1) is **DENIED.**

2. The Clerk is directed to enter judgment accordingly and to close the case.

3. Russell is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of

17

his petition. 28 U.S.C. § 2253(c)(1). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Russell "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quotation omitted), or that "the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotation and citation omitted). Russell has not made this showing. Because Russell is not entitled to a certificate of appealability, he may not appeal *in forma pauperis*.

  **DONE AND ORDERED** at Tampa, Florida, on January 28, 2021.

              */s/ William F. Jung*
              **WILLIAM F. JUNG**
              **UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Pro Se
Counsel of Record